**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| Jesus M.G.L., | Case No. 26-cv-2518 (NEB/DJF) |
| Petitioner, | |
| v. | |
| David Easterwood, *Field Office Director of Enforcement and Removal Operations, St. Paul Field Office, Immigration and Customs Enforcement,* Markwayne Mullin, *in his official capacity as Secretary of the U.S. Department of Homeland Security*, Todd M. Lyons, *in his official capacity as acting director of U.S. Immigration and Customs Enforcement*, Todd Blanche, *in his official capacity as acting Attorney General of the United States*, Eric Tollefson, *Kandiyohi County Jail Sheriff*, | **REPORT AND RECOMMENDATION** |
| Respondents. | |

This matter is before the Court on Petitioner Jesus M.G.L.'s[1] *Petition for Writ of Habeas Corpus* (ECF No. 1) ("Petition"). Jesus seeks an order for his immediate release from immigration detention, or in the alternative, an order for a bond hearing. For the reasons stated below, the Court recommends the Petition be granted and that Respondents be ordered to release him.

**BACKGROUND**

**I.      Entry and Detention**

Jesus is a citizen of Venezuela who entered the United States at the Brownsville, Texas Port of Entry in July of 2024 seeking asylum from political persecution. (ECF No. 1 at 2; ECF No. 6 at 1.) After Jesus presented himself at the United States border on July 9, 2024 for an appointment

---

[1] This District has adopted a policy of using only the first name and last initial of any

with Customs and Border Patrol scheduled through the CBP One app, officials placed Jesus in removal proceedings, granted him parole into the United States until July 8, 2026, and issued a Notice to Appear ordering him to appear at a hearing before an Immigration Judge on June 11, 2025. (ECF No. 1 at 2; ECF No. 1-1 at 18; ECF No. 7-2.) Jesus filed an Application for Asylum and Withholding of Removal on or about April 21, 2025. (ECF No. 1 at 6.)

Following his parole, Jesus resided peacefully in the United States and committed no crimes that would subject him to mandatory detention. (*Id*. at 2.) Jesus's wife and two children also reside in the United States. (*Id*. at 8.)

On or about February 16, 2026, North Dakota State Troopers stopped Jesus's vehicle. (ECF No. 6 at 2.) The troopers requested assistance from Immigration and Customs Enforcement ("ICE"). (*Id*.) A record check of Jesus indicated that he did not attend his immigration hearing on June 11, 2025. (*Id*.) Officials subsequently took Jesus into custody. (*Id*.) The I-213 document issued pursuant to his arrest indicates that, as of that date, Jesus was still paroled until July 8, 2026. (ECF No. 7-1 at 4.) On April 27, 2026, an immigration judge denied Jesus's asylum application. (ECF No. 1 at 7, ECF No. 6 at 2.) The denial is nonfinal because Jesus filed a timely appeal. (ECF No. 10 at 3.)

On April 30, 2026, officials transferred Jesus from the Grand Forks County Correctional Center to the Kandiyohi County Jail in Wilmar, Minnesota. (ECF No. 1 at 7.) Jesus filed his Petition on May 6, 2026 to challenge his ongoing detention at the Kandiyohi County Jail. (ECF No. 1.)

---

nongovernmental parties in orders in immigration matters.

## II.      Parole Status and Revocation

Jesus's Petition appears to assume the government originally granted him parole pursuant to its parole program for nationals from Cuba, Haiti, Nicaragua, and Venezuela and their immediate family members, which the Department of Homeland Security ("DHS") announced in 2022 and 2023 to allow them to "lawfully enter the United States in a safe and orderly manner" ("CHNV Program"). (*Id*. at 18, quoting Implementation of a Parole Process for Venezuelans ("Venezuelan CHNV Notice"), 87 Fed. Reg. 63507-17, 2022 WL 10510227 (Oct. 19, 2022).) The Petition further assumes his parole was summarily terminated, without any personal notice or individualized hearing, pursuant to a March 15, 2025 DHS notice in the Federal Register terminating the CHNV Program as to all program participants *en masse*. (*Id*. at 6-7; *see also id*. at 19, citing Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans ("CHNV Termination Notice"), 90 Fed. Reg. 13611-01, 2025 WL 894696 (Mar. 25, 2025).)

Respondents failed to address the grounds for revoking Jesus's parole in their Response to his Petition (*see* ECF No. 10-12, arguing that an individualized determination is not necessary to revoke an individual's parole without stating when, how or under what legal authority Jesus's parole was revoked). Based on its review of the record, the Court determined that Jesus was unlikely to have participated in the CHNV Program, which required that applicants "must have a supporter in the United States who agrees to provide housing and other supports as needed; must pass national security and public safety vetting; and must agree to fly at their own expense to an interior U.S. port of entry (POE), rather than entering at a land POE." (ECF No. 9 at 1, citing Venezuelan CHNV Notice, 87 Fed. Reg. 63507-17 (Oct. 19, 2022)). The Court noted that the parties had submitted no evidence of Jesus having met the CHNV Program requirements and that, contrary to those requirements, Jesus entered the United States at the border and not an interior POE. (ECF No. 9.)

3

The Court therefore ordered the parties to submit additional briefing "(Order for Additional Briefing") to clarify under what authority Jesus was originally paroled into the United States in July 2024. (*Id.*)

In Response to the Court's Order for Additional Briefing (ECF No. 9), Respondents conceded that Jesus was originally paroled under the general humanitarian parole statute, 8 U.S.C. § 1182(d)(5)(A), not the CHNV Program. (ECF No. 10 at 1.) Respondents pointed to Jesus's I-94 record, which references a "DT" Class of Admission, consistent with parole under 8 U.S.C. § 1182(d)(5)(A). (ECF No. 10 at 1, ECF No. 10-1.) Respondents no longer contend Jesus's parole was terminated via a non-individualized revocation process such as the Federal Register notice terminating the CHNV Program. Indeed, they now admit that "the present record does not support a finding that [Jesus's] parole has been revoked." (ECF No. 10 at 2.)

## III.    Relief Requested

The Petition asks the Court to order Respondents to release Jesus immediately under the conditions of his parole, or in the alternative, direct Respondents to provide him with a bond hearing. (ECF No. 1 at 33.) The Petition further requests an order enjoining Respondents from revoking Jesus's parole status without a pre-deprivation hearing and awarding his attorney's fees and costs under the Equal Access to Justice Act ("EAJA"). (*Id.*; *see also* ECF No. 11 at 5, arguing that current and former parolees can only be detained under 8 U.S.C. § 1226(a).) The Petition asserts claims based on alleged violations of: (1.) Fifth Amendment procedural due process; (2.) Fifth Amendment substantive due process; (3.) the Administrative Procedures Act; (4.) the *Accardi* Doctrine; and (5.) the Immigration and Nationality Act (INA). (ECF No. 1 at 22-32.)

4

**DISCUSSION**

## I.   Legal Standards

The federal habeas statute empowers federal courts to release civilly-detained individuals such as Jesus when that detention violates the Constitution or federal law. 28 U.S.C. § 2241; *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 779 (D. Minn. 2025). It is well-established that federal regulations are federal law. *Resolution Trust Corp. v. Home Sav. of America*, 946 F.2d 93, 96 (8th Cir. 1991); *Velocity Express Corp. v. Bayview Capital Partners, LP*, No. 02-cv-521 (RHK/AJB), 2002 WL 980502, at *2 n.3 (D. Minn. May 9, 2002). It therefore follows that a habeas petitioner may be released when his civil detention arises from a violation of federal regulations. *See In re United States*, 197 F.3d 310, 315 (8th Cir. 1999) (citing *United States ex re. Accardi v. Shaughnessy*, 347 U.S. 260, 266-68 (1954)).

## II.   Analysis

Notwithstanding the fact that Jesus entered the United States at a port of entry for a previously scheduled meeting with CBP officials, was granted parole through July 8, 2026, has remained law-abiding, and is still here pursuant to the original grant of parole, Respondents argue his detention is mandatory. (ECF No. 6 at 2-4; *see also* ECF No. 10 at 2.) Though Respondents' position is not entirely clear, they appear to contend Jesus is subject to mandatory detention under both 8 U.S.C. § 1225(b)(1)(B)(ii) as an "arriving alien" seeking asylum *and* under 8 U.S.C. § 1225(b)(2) as an "applicant for admission" who is in full removal proceedings. (ECF No. 6 at 3-4.)

However, individuals subject to mandatory detention under either provision of 8 U.S.C. § 1225(b) may be granted humanitarian parole under 8 U.S.C. § 1182(d)(5)(A). There appears to be no dispute that Jesus was granted such parole when he arrived on July 9, 2024, and that his parole has not been validly revoked. Since he cannot both be mandatorily detained and released on parole

5

at the same time, the question before the Court at this point is not whether Jesus satisfies the statutory prerequisites for mandatory detention, but whether his parole was improperly terminated at the time of his arrest. The Court concludes that Jesus's parole was improperly terminated and therefore recommends the Petition be granted and Respondents be ordered to release him immediately on that basis.[2]

8 U.S.C. § 1182(d)(5)(A) governs humanitarian parole, stating:

> The Secretary of Homeland Security may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

This provision requires the Secretary of Homeland Security ("Secretary") to determine "on a case-by-case basis" whether there are "urgent humanitarian reasons or [a] significant public benefit" in granting humanitarian parole. *Id.* And to revoke an individual's parole status, the Secretary must determine that those purposes have been served. *Id*.

The Secretary's parole powers are further refined by 8 C.F.R. § 212.5. This regulation clarifies what is required for parole to be revoked:

(e) Termination of parole — ...

> (2)(i) On notice. [If the parolee has not left the country and the parole period has not expired], upon accomplishment of the purpose for which parole was authorized or when in the opinion of [the Secretary or his delegees], neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated *upon written notice*

---

[2] Because the Court recommends granting the Petition based on the improper termination of Jesus's parole, it does not reach his arguments that: (1.) his detention is subject to 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225; and (2.) his detention violates the Due Process Clause of the Fifth Amendment of the U.S. Constitution. (ECF No. 1 at 3-22.)

> *to the alien* and he or she shall be restored to the status that he or she had at the time of parole. When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified.

8 C.F.R. § 212.5(e)(2)(i) (emphasis added).

There is no evidence in the record that Jesus has ever received notice of his parole being revoked or the reasons for any such revocation. Respondents concede that "no record has been identified indicating that DHS terminated or revoked Petitioner's parole." (ECF No. 10 at 2.) However, Respondents argue that "the issue of revocation is … a red herring" because Jesus's parole was *automatically* terminated upon the issuance of his Notice to Appear. (*Id.*, citing *Matter of Arambula-Bravo*, 28 I&N Dec. 388 (BIA 2021).) The Board of Immigration Appeals in *Matter of Arambula-Bravo* held that a Notice to Appear was sufficient to count as the "written notice" terminating parole under 8 C.F.R. § 212.5(e)(2)(i), because a Notice to Appear is defined as a "charging document" under 8 C.F.R. § 1003.13. *Matter of Arambula-Bravo*, 28 I&N Dec. at 392-393. Based on this administrative decision, Respondents contend that Jesus's parole was terminated automatically, and he reverted to his original status as an arriving alien subject to mandatory detention under 8 U.S.C. § 1225(b) when he received the Notice to Appear.

This argument is patently nonsensical. CBP officials issued Jesus his Notice to Appear on the *same day* that they granted him parole, July 9, 2024, immediately before they paroled him. (ECF No. 1-1 at 14; ECF No. 1-1 at 18; *see also* ECF No. 7 at 1, stating that "on or about July 9, 2024", "Petitioner was served a notice to appear (NTA) by U.S. Customs and Border Protection (CBP) and was released into the U.S. pending a hearing on June 11, 2025, before an Immigration Judge.".) It is apparent that Jesus's parole cannot have been terminated pursuant to a notice issued *before* he was paroled, and that his parole cannot have been granted and terminated at the same time. *Compare Rassul v. Field Officer Dir.*, No. 25-cv-232 (DLB), 2026 WL 834737, at *4 (E.D. Ky. Mar. 26,

2026) (rejecting respondents' argument that Notice to Appear served two days prior to Petitioner's grant of parole could serve as termination notice of that parole under 8 C.F.R. § 212.5(e)(2)(i) ("It follows logically that something cannot be rescinded before it is even granted."); *and Gonzalez v. Blanche*, No. 2:26-cv-00674 (ART/EJY), 2026 WL 1346637, at *4 (D. Nev. May 14, 2026) (rejecting respondents' argument that Notice to Appear served at the same time as petitioner's parole grant could serve as termination notice under 8 C.F.R. § 212.5(e)(2)(i) ("The Notice to Appear was issued when Mr. Gonzalez was initially paroled and so could not have terminated it."); *with Matter of Arambula-Bravo*, 28 I&N Dec. at 389 (deeming Notice to Appear as sufficient notice of parole termination when issued over three months after government granted petitioner's parole).

Furthermore, Respondents have failed to offer any explanation for terminating Jesus's parole as required. Under 8 U.S.C. § 1182(d)(5)(A), the Secretary must find that "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States" before his grant of parole can be terminated. *See Gabriel v. Bondi*, No. 25-cv-4298 (KMM/EMB), 2025 WL 3443584, at *6 (D. Minn. Dec. 1, 2025) (holding respondents failed to satisfy 8 U.S.C. § 1182(d)(5)(A) when they omitted rationale for terminating parole in parole termination notice or elsewhere). Here, the Notice to Appear offers no rationale for terminating Jesus's parole (which is not surprising, since the government granted him parole at that time), nor is there any other evidence in the record to suggest Jesus has ever received notice of Respondent's reasons for revoking his parole, through formal notice or any other means. The Court thus concludes Respondents have failed to demonstrate that "neither humanitarian reasons nor public benefit warrants the continued presence of [Jesus] in the United States." For these reasons, the Court finds that Respondents did not lawfully revoke or otherwise terminate Jesus's grant of parole, which remains valid until July 8, 2026.

8

Respondents are obligated to comply with the law, including applicable statutes and their own regulations. *Accardi*, 347 U.S. at 266–67; *United States v. Lee*, 274 F.3d 485, 492 (8th Cir. 2001) ("[T]he *Accardi* doctrine bars administrative agencies from taking action inconsistent with their internal regulations when it would affect individual rights[.]") (quotation omitted). Detention of any noncitizen with a valid grant of parole in place is unlawful. *See Chourio Herrera v. Bondi*, No. 26-cv-1895 (JMG), 2026 WL 827571, at *2 (D. Minn. Mar. 25, 2026) ("Because the Court finds that the petitioner's grant of humanitarian parole was still valid when he was detained in December 2025, the Court finds his detention is unlawful."). When detention is unlawful, release is the proper relief. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (stating that release is the "typical remedy" for "unlawful executive detention"); *Chourio Herrera*, 2026 WL at *3 (ordering release following detention without proper termination of Section 1182(d)(5)(A) parole); *Kudyrkulov v. Martin*, No. 6:26-cv-3035 (MDH), 2026 WL 312120, at *5 (W.D. Mo. Feb. 5, 2026) (same). The Court therefore recommends that Jesus be released on the conditions applicable to his original grant of parole.[3]

## III.   Objections

Given the expedited nature of these proceedings, the Court is altering the standard timelines for Respondents to file objections to this Report and Recommendation. *See* L.R. 72.2(b)(1) ("A party may file and serve specific written objections to a magistrate judge's proposed findings and

---

[3] The Court recommends denying Jesus's request for an injunction permanently restraining Respondents from detaining him again in the future without a bond hearing pursuant to 8 U.S.C. § 1226(a) (*see* ECF No. 11 at 5-6), because the Court cannot conclude that detention without a bond hearing would never be warranted under any possible future circumstance. *See Kudyrkulov*, 2026 WL 312120at *4 (denying similar request). Jesus also requests attorney's fees under the Equal Access to Justice Act ("EAJA"), 29 U.S.C. § 2412(d)(1)(A). Given the absurdity and misleading nature of the defenses Respondents have offered, the Court agrees that Respondent's position is not "substantially justified." However, this issue should be raised in a motion for EAJA fees after the Petition is fully resolved.

recommendations within 14 days after being served with a copy of the recommended disposition, *unless the court sets a different deadline*.") (emphasis added).  Respondents must file any objection to this Report and Recommendation on or before **June 11, 2026**.  Jesus may file a response to any objections on or before **June 12, 2026**.

## RECOMMENDATION

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.  Petitioner Jesus M.G.L.'s *Petition for Writ of Habeas Corpus* (ECF No. 1) be **GRANTED.**

2.  Respondents be ordered to release Petitioner from custody:

    A.  As soon as practicable;

    B.  Inside the State of Minnesota;

    C.  Subject to the conditions of his parole issued July 9, 2024;

    D.  At a safe time and place communicated in advance to counsel; and

    E.  With **_all_** of Petitioner's personal effects in Respondents' possession, such as driver's license, immigration papers, passport, cell phone, and keys.

Dated: June 9, 2026

*s/ Dulce J. Foster*
Dulce J. Foster
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  For the reasons previously stated, Respondents must file any objection to this Report and Recommendation on or before **June 11, 2026**.  Petitioner may file a response to any objections on or before **June 12, 2026**.